No. 26-40434

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

U.S. COURT OF APPEALS
RECEIVED
Oct 04, 2026
FIFTH CIRCUIT

Jason Clayton,
Plaintiff-Appellant

v.

Brook Fulks, Judge, in her official capacity; Stacey Samples;
Sydney Robison; Office of the Attorney General of Texas;
Ashlie Sims Daniels,
Defendants-Appellees

On Appeal from the United States District Court
for the Eastern District of Texas, Sherman Division
Civil Action No. 4:25-cv-00779-SDJ-AGD

**BRIEF OF PLAINTIFF-APPELLANT**
**JASON CLAYTON**

Jason A. Clayton, Pro Se
2401 W. Spring Creek Parkway, Apt. 2506
Plano, Texas 75023
310-600-4369
JasonAnthonyClayton@gmail.com

## CERTIFICATE OF INTERESTED PERSONS

No. 26-40434, Jason Clayton v. Brook Fulks, et al. The undersigned pro se Appellant certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal. *See* 5th Cir. R. 28.2.1.

**Plaintiff-Appellant:** Jason Clayton, pro se.

**Defendants-Appellees:** Brook Fulks, Judge, in her official capacity; Stacey Samples; Sydney Robison; Office of the Attorney General of Texas; Ashlie Sims Daniels.

**District judicial officers:** United States District Judge Sean D. Jordan and United States Magistrate Judge Aileen Goldman Durrett.

**Opposing counsel / law firms:** None known to Appellant. The district-court action was dismissed before service of process, and to Appellant's knowledge no appellee or appellee counsel has appeared in this appeal.

/s/ Jason A. Clayton
Jason A. Clayton, Pro Se

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would assist the Court in resolving two questions on a closed written record. First, *English v. Crochet*, 154 F.4th 369 (5th Cir. 2025), requires attention to the source of the asserted injury, while the recommendation below characterized the action by its domestic-relations "thrust." Second, *Farmers Tex. Cnty. Mut. Ins. Co. v. 1st Choice Accident & Inj., L.L.C.*, 168 F.4th 271 (5th Cir. 2026), requires review of the amendment record for ample and obvious grounds to deny leave under Rule 15. Clayton requested targeted amendment before judgment and later tendered a narrower complaint. Argument would assist the Court in applying those standards to distinct claims and remedies without deciding a Texas support issue.

# TABLE OF CONTENTS


Certificate of Interested Persons.......................................................................2
Statement Regarding Oral Argument...................................................................3
Table of Contents...................................................................................................4
Table of Authorities................................................................................................6
Jurisdictional Statement.........................................................................................8
Issues Presented.....................................................................................................9
Statement of the Case...........................................................................................10
A. Scope of the appeal..........................................................................................10
B. Written-record screening posture......................................................................11
C. The operative papers alleged materially different federal injuries..................11
D. The recommendation used a complaint-wide domestic-relations “thrust”......14
E. Clayton requested targeted amendment before judgment...............................14
F. Dkt. 17 tendered a narrower complaint; Dkt. 18 treated it as repetition..........15
Summary of the Argument...................................................................................16
Argument.............................................................................................................18
Standard of Review and Preservation..................................................................18
I. The district court used the wrong jurisdictional unit of analysis.......................20
A. Rooker-Feldman turns on the source of the particular injury and the relief sought.........................................................................................................20
B. The complaint-wide “thrust” characterization replaced the required causal inquiry.......................................................................................................22
C. *Blessett* applies the source-of-injury rule to child-support enforcement.........23
D. *T.M.*’s functional inquiry and *Whitman* require attention to the actual injury and relief...........................................................................................24
II. The independently sourced allegations required separate treatment.................26
A. The record identifies the challenged administrative conduct and distinct First Amendment theories.............................................................................26
B. The enforcement and record-handling allegations identify separate procedures and injuries.......................................................................................29
C. A mixed pleading requires claim-specific jurisdictional treatment................31
III. Alternative grounds must be applied to the defendant, claim, and remedy they govern..........................................................................................................32
A. The defendants’ different capacities and requested remedies matter.............32

B. Clear legal grounds may be resolved; fact-bound grounds may warrant remand....... 34
IV. The amendment record does not supply ample and obvious grounds for denial....... 35
A. Dkt. 17 tendered a materially narrower complaint....... 35
B. *Farmers* requires appellate review under the postjudgment amendment standard....... 37
C. Clayton's prejudgment request distinguishes *Farmers*, and the record answers the *Foman* factors....... 37
D. The anti-rehashing rule does not dispose of the separate amendment request....... 43
V. Limited vacatur and remand are the proper disposition....... 44
Conclusion....... 46
Certificate Regarding Service....... 47
Certificate of Compliance....... 47

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170 (5th Cir. 2018)..................19, 37, 43
*Ankenbrandt v. Richards*, 504 U.S. 689 (1992)......................................................24
*Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006).................................................8, 29
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...................................................................40
*Bell v. Hood*, 327 U.S. 678 (1946).....................................................................8, 29
*Blessett v. Tex. Off. of the Att'y Gen. Galveston Cnty. Child Support Enf't Div.*, No. 18-40142 (5th Cir. Mar. 6, 2019) (per curiam) (unpublished) .........................................................................................................16, 23, 30
*Christopher v. Harbury*, 536 U.S. 403 (2002).........................................................28
*Clay v. Allen*, 242 F.3d 679 (5th Cir. 2001)...........................................................27
*Dennis v. Sparks*, 449 U.S. 24 (1980)..............................................................32, 34
*English v. Crochet*, 154 F.4th 369 (5th Cir. 2025)….3, 16, 18, 21, 24–25, 31, 34, 44
*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005).......16, 20, 25
*Farmers Tex. Cnty. Mut. Ins. Co. v. 1st Choice Accident & Inj., L.L.C.*, 168 F.4th 271 (5th Cir. 2026)......................................3, 9, 17–19, 35, 37–39, 43, 45–46
*Foman v. Davis*, 371 U.S. 178 (1962).............................................9, 16, 18, 37, 44
*Forrester v. White*, 484 U.S. 219 (1988)................................................................32
*In re Deepwater Horizon*, 785 F.3d 986 (5th Cir. 2015)........................................43
*Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per curiam)..................................29
*Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002)....................................................28
*King v. Dogan*, 31 F.3d 344 (5th Cir. 1994)...........................................................19
*Lance v. Dennis*, 546 U.S. 459 (2006) (per curiam)...............................................20
*Mathews v. Eldridge*, 424 U.S. 319 (1976)...............................................36, 40–41
*Mireles v. Waco*, 502 U.S. 9 (1991) (per curiam)..................................................33
*Mitchell v. Goings*, 37 F.4th 169 (5th Cir. 2022).....................................................8
*N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461 (5th Cir. 2018).........................................................................................................37
*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001).................................42
*Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003)....................................37
*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007)...........31
*Skinner v. Switzer*, 562 U.S. 521 (2011)..................................................................20
*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013)............................................35
*Stripling v. Jordan Prod. Co.*, 234 F.3d 863 (5th Cir. 2000)..................................40

*T.M. v. Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739 (2026)........................24–25
*Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433 (2017)....................................32
*Truong v. Bank of Am., N.A.*, 717 F.3d 377 (5th Cir. 2013)............................21, 23
*United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375 (5th Cir. 2003)....................................................................................38
*Whitman v. Lambright*, No. 25-30688 (5th Cir. Apr. 14, 2026) (per curiam) (unpublished)....................................................................................24–25
*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021).......................................27
*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)........................................33
*Zinermon v. Burch*, 494 U.S. 113 (1990).............................................................30

**Constitutional Provisions**

U.S. Const. art. III....................................................................................32
U.S. Const. amend. I.........................................................................8, 22, 26
U.S. Const. amend. XIV.......................................................................8, 30

**Statutes and Rules**

28 U.S.C. § 1291.........................................................................................8–9
28 U.S.C. § 1331............................................................................................8
28 U.S.C. § 1343............................................................................................8
28 U.S.C. § 1915...................................................................................11, 22, 35
42 U.S.C. § 666(a)(7)(B)(i).............................................................................30
42 U.S.C. § 1983.........................................................................................8, 34
Fed. R. App. P. 4(a)(4)....................................................................................9
Fed. R. App. P. 25........................................................................................47
Fed. R. App. P. 32........................................................................................47
Fed. R. Civ. P. 8...........................................................................................28
Fed. R. Civ. P. 12(b)(6).................................................................................40
Fed. R. Civ. P. 15.......................................................3, 9, 16–17, 19, 37, 42–46
Fed. R. Civ. P. 59(e).............................................................8–9, 15, 37, 43
Fed. R. Civ. P. 60.........................................................................................37
5th Cir. R. 28.2.1............................................................................................2
Tex. Fam. Code § 157.312(d)..........................................................................41
Tex. Fam. Code § 157.313(a)(11), (e).............................................................41
Tex. Fam. Code § 157.323..............................................................................41

## **JURISDICTIONAL STATEMENT**

The operative amended complaint invoked 42 U.S.C. § 1983 and alleged injuries under the First and Fourteenth Amendments. ROA.269–275. Those claims arise under 28 U.S.C. §§ 1331 and 1343, subject to any applicable jurisdictional bar. *Bell v. Hood*, 327 U.S. 678, 681–83 (1946), and *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513–16 (2006), distinguish ordinary merits insufficiency from the absence of a federal question. Neither permits a forbidden de facto appeal from a state judgment. The issue is whether Rooker-Feldman barred each component of the operative pleading.

The district court entered its adoption order and final judgment on April 17, 2026, dismissing the entire action without prejudice. ROA.305–306. The adoption order states that the court considered Clayton's objections, conducted de novo review, and adopted the magistrate judge's findings and conclusions; it contains no separate claim-specific merits analysis. ROA.305. A whole-case dismissal is final under 28 U.S.C. § 1291 even when labeled without prejudice. *Mitchell v. Goings*, 37 F.4th 169, 172 (5th Cir. 2022).

Clayton filed Dkt. 17, his Rule 59(e) motion and request for leave to amend, on May 15, 2026, the twenty-eighth day after judgment. ROA.307–318. The court denied it in Dkt. 18 on July 6, 2026. ROA.319–322. His notice of appeal, filed July 13, expressly designates the final judgment, the adoption order, and the July 6

denial of Rule 59(e) relief and leave to amend. ROA.323. The timely motion extended the appeal period until disposition, and the subsequent notice timely brings both rulings before this Court. Fed. R. App. P. 4(a)(4)(A)(iv), (B)(ii). This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## **ISSUES PRESENTED**

1. Whether the district court erred by dismissing the entire action under Rooker-Feldman based on its perceived domestic-relations "thrust," rather than determining whether the particular alleged injury was caused by the Texas judgment and whether the relief sought would require review and rejection of that judgment.

2. Whether denial of Dkt. 17's request to file an attached, narrower complaint can stand under the Rule 15/*Foman* considerations when Clayton requested targeted amendment before judgment and the existing record does not supply ample and obvious grounds for denial under *Farmers*.

## STATEMENT OF THE CASE

### A. Scope of the appeal

This appeal challenges the federal dismissal and the denial of postjudgment leave to amend. Clayton seeks vacatur and remand for claim-specific adjudication of the independently sourced federal injuries presented in the operative papers and proposed amendment. The requested appellate disposition would leave the underlying Texas support judgment, support amount, arrears, custody, and visitation intact. It would permit consideration of the challenged enforcement and administrative conduct under the federal rules governing each claim and remedy.

That limitation does not validate disputed state procedures, accounting, service, or enforcement conduct. The jurisdictional question is whether the federal injuries actually pleaded can be adjudicated without appellate review and rejection of the Texas judgment. The answer turns on the source of each injury and the relief necessary to remedy it.

The April 17 dismissal is reviewed against the operative amended pleading and supplement. ROA.269–275. Clayton preserved his claim-specific objection and requested targeted amendment before judgment. ROA.300–303. The proposed complaint attached to Dkt. 17 concerns the separate July 6 amendment ruling; it does not retroactively amend the pleading in place at judgment. ROA.313–315, 319–322.

**B. Written-record screening posture**

1. Clayton filed this pro se civil-rights action on July 22, 2025. The district court granted leave to proceed in forma pauperis and expressly ordered that "service of process shall be withheld pending judicial screening" under 28 U.S.C. § 1915. ROA.267–268. No defendant was served or appeared before judgment. The case never reached discovery, an evidentiary hearing, or trial. This appeal therefore presents a closed written record of pleadings, screening orders, objections, and postjudgment papers.

2. The district court's screening order required Clayton to identify separately the claims against each defendant, the legal and factual basis for each claim, the relief connected to each claim, and the applicability of Rooker-Feldman, *Younger*, and immunity doctrines. ROA.263–266. Clayton filed an amended complaint on August 6, 2025, and a later supplement. ROA.269–275. The final recommendation nevertheless resolved jurisdiction through the lawsuit's overall domestic-relations "thrust," rather than the source of each asserted injury.

**C. The operative papers alleged materially different federal injuries**

3. Samples is the 470th District Court's court coordinator; Robison is the lawyer identified in Clayton's papers as counsel for Ashlie Sims, the opposing private party and support beneficiary. ROA.4–5, 8, 39. The amended complaint attributes clerk or coordinator overreach and procedural interference to Samples, and off-

docket participation and due-process interference to Robison. ROA.269–270. Its superseding capacity and relief provisions name Samples and Robison individually for damages and identify separate official-capacity requests. ROA.270–271.

4. Count I alleges that administrative or enforcement acts, including "docket manipulation, continued collections/credit reporting, and interference with filings," occurred without required notice and an opportunity to be heard. ROA.271. Count II alleges adverse action in response to protected petitioning, including "obstructing filings/records." *Id.* Count III requests prospective relief against appropriate OAG officials and administrative supervisors; Count IV seeks declaratory relief concerning the challenged practices. *Id.* The complaint's fact addendum describes an allegedly unilateral change of the state docket to "cancelled" while Clayton's federal IFP motion was pending, "without notice, hearing, or signed order." ROA.272.

5. The earlier record also supplies a concrete allegation of economic harm from credit reporting. Clayton's sworn affidavit identifies an "OAG Child Support" entry of $12,403.00, reportedly furnished around May 18, 2025, and attributes the loss of a Chase employment opportunity to that entry. ROA.138–140. Chase's June 16, 2025 letter states that consumer-report information contributed to its decision against further consideration. ROA.141. The affidavit supplies the allegation connecting the OAG entry to the loss; the letter corroborates the consumer-report

basis of the decision. These materials give factual context to the operative allegations of credit-reporting injury and financial loss. ROA.271.

6. The November 18 supplement adds a specific date: it alleges a September 3, 2025 DWOP, its immediate designation as "Cancelled: Other" without a written order, and a second DWOP, with asserted delay, enforcement exposure, and interference with access to courts. ROA.273–275. It also increases and itemizes damages, including amounts against Judge Fulks and the OAG, despite the earlier capacity limitations. ROA.270, 274. Those varying acts, capacities, and remedies must be examined as pleaded; they cannot all be treated as one request to terminate support.

7. The appeal challenges the blanket jurisdictional disposition of the independently sourced claims presented against all defendants, including the officer-directed and declaratory theories. ROA.269–275. Samples and Robison are the defendants specified in Counts I and II; Count III identifies appropriate OAG officials and supervisors, and Count IV addresses official-capacity practices. ROA.271. Judge Fulks and Ashlie Sims, identified in the appellate caption as Ashlie Sims Daniels, have distinct alleged roles. ROA.269–270, 274. Section III addresses those differences. The requested review is not confined to two defendants merely because their allegations furnish a principal example of the jurisdictional error.

**D. The recommendation used a complaint-wide domestic-relations “thrust”**

8. The recommendation did not perform that classification. It stated that “the thrust of Plaintiff’s suit is to terminate his child support obligations.” ROA.295. It then reasoned that the claims were “related to family disputes of divorce and child support.” ROA.296. On that basis it recommended dismissal of the entire action for lack of subject-matter jurisdiction. ROA.293–297. The April 17 adoption order adopted the recommendation without a separate claim-by-claim analysis. ROA.305.

9. The central appellate problem is therefore methodological and record-specific. The court first required Clayton to separate claims, defendants, factual bases, remedies, and threshold doctrines; after he did so, the recommendation replaced those distinctions with a single global objective. Rooker-Feldman asks what caused the particular federal injury and whether the requested relief requires review or rejection of the state judgment. An overall “thrust” or “related to family disputes” label answers a different question.

**E. Clayton requested targeted amendment before judgment**

10. Clayton objected that “related to” was not the Rooker-Feldman test, disputed the overall “thrust” characterization, and distinguished enforcement conduct from judgment-caused injury. ROA.300–302. He also expressly requested amendment before judgment: “Plaintiff respectfully requests leave to amend if the Court

concludes that further clarification is required." ROA.303. That request followed a paragraph proposing clarification of "any defendant, claim, or form of relief." *Id.* The district court nevertheless adopted the recommendation and dismissed the action. ROA.305–306.

**F. Dkt. 17 tendered a narrower complaint; Dkt. 18 treated it as repetition**

11. Dkt. 17 sought reopening and leave to file the attached tailored second amended complaint. ROA.307, 312–315. The proposal expressly excludes vacatur, modification, termination, or a stay of a support order; recalculation of arrears; and changes to custody or visitation. ROA.313 ¶ 2. It identifies the May 13, 2024 OAG lien notice, the claimed $6,105.89 arrears balance as of March 31, 2024, and Program Supervisor Lisa Hawes as signatory. ROA.314 ¶ 12; ROA.317. The notice states that a lien had been filed with the county clerk and describes restrictions on property transfer and possible levy or seizure. ROA.317. Clayton offered it as evidence of enforcement activity and property restraint, not as newly discovered evidence. ROA.307–310, 316.

12. Dkt. 18 denied relief on July 6, 2026. The order repeated the "thrust" characterization, described the motion as repetitive, invoked Rule 59(e)'s anti-rehashing rule, and concluded that the strict requirements for reconsideration were unmet. ROA.319–322. It did not analyze the attached proposed complaint for

futility, undue prejudice, bad faith, undue delay, or repeated failure to cure under Rule 15 and *Foman*.

## **SUMMARY OF THE ARGUMENT**

13. The April 17 judgment treated materially different allegations as a single attack on child support. Rooker-Feldman instead asks whether the particular injury was caused by a state judgment and whether federal relief would review and reject that judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *English v. Crochet*, 154 F.4th 369, 373–75 (5th Cir. 2025). *English* rejected a district court's characterization of the "crux" of a defamation claim as an attack on a state sanctions order. Here, the recommendation similarly relied on the action's perceived "thrust" and its relationship to family disputes. ROA.295–296.

14. The closest factual analogy is *Blessett v. Tex. Off. of the Att'y Gen. Galveston Cnty. Child Support Enf't Div.*, No. 18-40142, slip op. at 2–3 (5th Cir. Mar. 6, 2019) (per curiam) (unpublished). *Blessett* separated barred attacks on support judgments from constitutional claims about the OAG's enforcement and collection conduct that did not seek review and rejection of those judgments. That persuasive application of the published source-of-injury rule supports separate treatment of Clayton's enforcement, record-handling, and retaliation claims according to their alleged source of injury. https://www.ca5.uscourts.gov/opinions/unpub/18/18-40142.0.pdf

15. The operative pleading alleges an administrative docket cancellation during federal IFP review without notice, hearing, or a signed order, and separately challenges collection and credit-reporting practices. ROA.270–272. The earlier affidavit and Chase letter identify an alleged employment consequence of the OAG credit entry. ROA.138–141. Those allegations require examination of the challenged conduct and resulting harm while leaving the support judgment operative. Clayton need not prove ultimate constitutional liability to show that the district court used the wrong jurisdictional test.

16. The same claim-specific treatment applies across defendants and remedies. The officer-directed claim concerns ongoing enforcement practices; the declaratory claim concerns the challenged administrative conduct; and the damages theories identify personal injuries attributed to particular actors. ROA.269–275. The Court should determine which, if any, require rejection of a state judgment and address other doctrines under their own standards. A ground disposing of one defendant or remedy cannot supply the source of every other injury.

17. The July 6 order presents a separate amendment question. *Farmers Tex. Cnty. Mut. Ins. Co. v. 1st Choice Accident & Inj., L.L.C.*, 168 F.4th 271, 276–80 (5th Cir. 2026), requires consideration of the Rule 15 factors but rejects automatic remand merely because the district court used the wrong framework. This Court must examine the existing record for "ample and obvious" grounds to deny leave.

Clayton accordingly addresses delay, prejudice, repeated amendment, and futility; he does not rest on Dkt. 18's omission of an express factor-by-factor analysis.

18. The principal distinction from *Farmers* is Clayton's express request for targeted amendment in his April 2 objections, before judgment. ROA.303. He then attached a narrower pleading to his timely postjudgment motion. ROA.313–315. The May 2024 lien notice was available before this action, a fact relevant to delay. But the proposed amendment uses that event to identify the asserted property restraint, the responsible enforcement office and signatory, and the limited federal relief sought. ROA.314, 317. The prejudgment request, the actual proposal, and the preservice history must be considered under *Foman v. Davis*, 371 U.S. 178, 182 (1962).

19. Clayton seeks partial vacatur and remand sufficient to permit adjudication of independently sourced federal claims and consideration of the tendered amendment under the governing standard. This disposition would decide no support amount, arrearage, custody issue, or ultimate federal liability. It would leave any claim-specific alternative ground available under its own rules.

## ARGUMENT

### Standard of Review and Preservation

20. This Court reviews a Rooker-Feldman dismissal de novo. *English*, 154 F.4th at 372–75. Denial of postjudgment leave to amend is reviewed for abuse of

discretion, applying the considerations governing Rule 15(a). *Farmers*, 168 F.4th at 276–80; *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 184–85 (5th Cir. 2018). The absence of adequate reasons does not itself require reversal: this Court reviews the existing record for "ample and obvious" grounds supporting denial. *Farmers*, 168 F.4th at 277–80.

21. Clayton preserved the source-of-injury issue in his objections to the recommendation. ROA.300–302. He requested leave to clarify any defendant, claim, or remedy before judgment. ROA.303. Dkt. 17 then requested reopening and permission to file the attached complaint and lien exhibit. ROA.307, 312–317. Dkt. 18 denied that request as repetitive reargument. ROA.322.

22. The April 17 dismissal must be reviewed against the operative pleading and the factual materials it adopts; the July 6 order must also be reviewed against the proposed amendment tendered with Dkt. 17. ROA.269–275, 307–318. The proposed complaint is not a retroactive substitute for the operative complaint. It supplies the distinct basis for reviewing the denial of leave to amend.

23. The operative complaint expressly refers to "over 30 exhibits" documenting coordinator interference, false docket entries, and conflicting administrative instructions. ROA.270. That reference matters under *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994), which recognizes adoption or incorporation by reference as the exception to an amended complaint's superseding effect. Clayton relies on the

identified coordinator exhibits through that express adoption. ROA.8, 32–39. The employment affidavit and consumer-report letter support the collection and credit-reporting allegations expressly retained in Count I and the officer-directed relief in Count III. ROA.138–141, 271. Read liberally and together with the exhibit reference, those allegations provide a basis for considering the corresponding factual materials. Alternatively, the preserved request to clarify claims and defendants supports making that incorporation explicit on remand. ROA.303. The argument does not treat every paper in the record as automatically part of the operative pleading.

## I. The district court used the wrong jurisdictional unit of analysis.

### A. Rooker-Feldman turns on the source of the particular injury and the relief sought.

24. Rooker-Feldman occupies a narrow jurisdictional ground. It applies to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal action and inviting federal district-court review and rejection of those judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It is not preclusion by another name, *Lance v. Dennis*, 546 U.S. 459, 466 (2006), and it does not arise merely because federal and state disputes share facts. *Skinner v. Switzer*, 562 U.S. 521, 531-33 (2011).

25. *English* supplies the controlling Fifth Circuit methodology. The district court there concluded that the "crux" of a defamation claim was that state sanctions rulings were erroneous and treated the claim as a forbidden attack on the sanctions order. The Fifth Circuit disagreed. The "key inquiry" was the source of the injury alleged in the federal complaint: an injury stemming from the state judgment is barred; an injury arising from a defendant's own actions is an independent claim. *English*, 154 F.4th at 373-75; *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382-85 (5th Cir. 2013).

26. That rule requires causal classification, not a thematic label. The recommendation here characterized the suit by an overall domestic-relations "thrust." ROA.295. It also relied on whether the claims were "related to" child support. ROA.296. But a global theme is not the legal cause of every alleged injury. One state-court history can generate multiple federal allegations with different actors, acts, remedies, and sources of injury.

27. *Truong* makes the same distinction from another direction. Merely calling conduct "enforcement" does not make it independent if success would require review and rejection of the state judgment. *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 383-85 (5th Cir. 2013). Clayton therefore does not propose an "enforcement exception" to Rooker-Feldman. His test is stricter: assume the Texas judgment is

valid and ask whether the federal claim can still be adjudicated without reviewing, modifying, rejecting, or refusing to enforce that judgment.

**B. The complaint-wide "thrust" characterization replaced the required causal inquiry.**

28. Section 1915(e)(2) authorized early screening, but it did not alter the jurisdictional doctrine being applied. The district court's own screening order demonstrates the required level of specificity: it directed Clayton to identify the claims against each defendant, the legal and factual basis, the relief tied to each claim, and the applicability of Rooker-Feldman, *Younger*, and immunity. ROA.263–266. The separate IFP order withheld service while that screening occurred. ROA.267–268. Having demanded claim-specific pleading, the court could not replace the resulting mixed pleading with one complaint-wide objective for purposes of Rooker-Feldman.

29. Clayton does not argue that the district court lacked authority to examine subject-matter jurisdiction sua sponte. It plainly had that duty. The issue is whether it applied the correct test. The answer cannot turn on whether the subject matter involved child support in the background; it turns on whether the state judgment itself caused the particular injury for which federal relief is sought.

30. The mismatch is visible on the face of the record. The operative pleading separately identified due-process and First Amendment counts, actor-specific

allegations, damages claims, declaratory relief, and prospective enforcement relief. ROA.271–272. Some components may fail for reasons unrelated to Rooker-Feldman. But the district court did not classify them before dismissing the entire action for lack of jurisdiction.

**C. *Blessett* applies the source-of-injury rule to child-support enforcement.**

31. *Blessett* applies this distinction in the same child-support setting. The Fifth Circuit affirmed dismissal of claims attacking divorce, paternity, and support judgments, but vacated dismissal of claims alleging fraud and constitutional violations by the OAG and its contractors in enforcing and collecting support. Those latter claims did not ask the federal court to review and reject a state order. *Blessett*, slip op. at 2–3. Although unpublished and persuasive rather than binding precedent, *Blessett* is a close factual application of *Truong*'s published rule. It confirms that child-support enforcement allegations cannot be classified solely by the subject matter of the underlying judgment.

32. *Blessett* also identifies the limit of Clayton's notice theory. An allegation that a litigant lacked notice of a state-court hearing does not itself permit a federal district court to undo the resulting judgment. *Id.* at 2. Clayton's independent-conduct argument therefore concerns alleged administrative acts and procedures causing their own deprivation, not a demand to invalidate a state adjudication for defective hearing notice. The operative counts must be assessed on that distinction.

ROA.271–272. *English* likewise confirms that an independent injury may arise during state litigation; location or timing alone does not answer the causal inquiry. 154 F.4th at 373–75.

33. The traditional domestic-relations exception supplies no broader shortcut. *Ankenbrandt v. Richards* describes a limited exception concerning decrees of divorce, alimony, and child custody in diversity jurisdiction. 504 U.S. 689, 701–04 (1992). Clayton invoked federal civil-rights jurisdiction, and the appellate relief requested here does not include such a decree. Domestic-relations context may matter to Rooker-Feldman, abstention, immunity, or relief, but it does not displace the standards of those separate doctrines.

34. The April 17 adoption order supplied no independent defendant-specific merits ruling. ROA.305. Accordingly, correcting the jurisdictional unit of analysis does not require this Court to decide that Clayton has already proved liability. It requires only that materially different injuries be classified under the doctrine that actually governs them.

### D. *T.M.'*s functional inquiry and *Whitman* require attention to the actual injury and relief.

35. *T.M. v. Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739 (2026), holds that Rooker-Feldman can apply although further state appellate review remains available. The majority's functional inquiry examines whether the federal suit

seeks, in substance, appellate review of a state judgment. No. 25-197, slip op. at 10–11 (U.S. June 18, 2026). Clayton accepts that substance controls: calling relief “damages” or “prospective” does not save a claim whose success requires rejection of the judgment. But the functional inquiry still must identify the injury and relief at issue; it does not make a domestic-relations theme the source of every injury. *T.M.* preserves the doctrine’s narrow scope. *Id.* at 18. Read with *English*, the inquiry remains whether adjudicating the particular claim would exercise appellate review, not whether its history includes a support dispute.

36. The chronology independently requires attention. *Exxon* limits the doctrine to injuries caused by state judgments rendered before the federal action commenced. 544 U.S. at 284, 292–93. Clayton commenced this action on July 22, 2025. ROA.4. The cancellation alleged to have occurred during federal IFP review and the September 3 events therefore cannot themselves supply the required prefiling judgment. ROA.270, 272, 274. *T.M.* retains that temporal requirement. Slip op. at 18. A later act may still implement an earlier judgment, so the relevant inquiry remains which act or judgment caused the particular injury. The July 18 setting notice, the alleged administrative cancellation, and the later dismissal events must each be evaluated on their own chronology and function.

37. *Whitman v. Lambright*, No. 25-30688, slip op. at 2 (5th Cir. Apr. 14, 2026) (per curiam) (unpublished), illustrates the other side of the boundary: its claims

stemmed from the contention that the state court erred in registering a child-support order. Here, Clayton seeks claim-specific review of alleged administrative interference, retaliation, and enforcement procedures. ROA.270–275. The operative allegations must be classified by what adjudicating each would require, including whether the asserted federal injury can be addressed while leaving the support judgment in force. https://www.ca5.uscourts.gov/opinions/unpub/25/25-30688.0.pdf

## II. The independently sourced allegations required separate treatment.

### A. The record identifies the challenged administrative conduct and distinct First Amendment theories.

38. The record identifies the participants and procedural events underlying the interference allegations. Clayton's state-court motion describes the June 3, 2025 motion practice, including a Motion to Compel Discovery and Production, and the July 15 appearance. ROA.8. Robison's July 11 email challenged service of pleadings filed after April 17; Samples's July 14 reply described the upcoming status hearing. ROA.34–35, 39. The amended complaint expressly refers to the previously submitted exhibits documenting coordinator interference and conflicting instructions. ROA.270.

39. The July 18 document signed in Samples's name sets a September 3 dismissal event, directs Clayton not to appear, and specifies disposition or service conditions

for avoiding dismissal. ROA.32. It supplies the setting for the interference allegations; Clayton does not treat its signature alone as proof of an unconstitutional act. The alleged administrative wrong includes the later cancellation without notice, hearing, or an identified order during federal IFP review. ROA.270–272. The November supplement separately alleges a September 3 DWOP, an immediate "Cancelled: Other" entry without a written order, and a second DWOP, producing delay and enforcement exposure. ROA.274. The challenge concerns the asserted interference and record alteration, whose source must be distinguished from an actual judicial disposition.

40. *Clay v. Allen* distinguishes acts required by a court order or judicial direction, which receive absolute immunity, from routine duties receiving, at most, qualified immunity. 242 F.3d 679, 682 (5th Cir. 2001). The July 18 setting notice does not establish that a later record alteration implemented judicial direction. Clayton alleges a unilateral administrative cancellation of the docket entry. ROA.272. Its function and any judicial direction for that particular act require separate examination. The absence of a written order alone does not resolve that inquiry. *Whole Woman's Health v. Jackson* addresses prospective relief against neutral judges and clerks adjudicating and docketing cases under a challenged statute. 595 U.S. 30, 39–42 (2021). Here, the allegations concern active obstruction and alteration of records, and the pleading seeks damages for personal participation and

prospective relief concerning ongoing record handling. ROA.270–272. Those remedies require examination of the particular act and, for prospective relief, an ongoing injury traceable to the defendant that the requested relief would redress. Clayton preserves both remedial theories.

41. Count II expressly alleges retaliation for protected petitioning and identifies obstruction of filings or records as adverse conduct. ROA.271. A retaliation claim concerns protected activity, an injury sufficiently adverse to deter ordinary firmness, and retaliatory motivation. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Clayton's state-court filings preceded the July 18 notice; the alleged docket cancellation during federal IFP review is a separate, later event. ROA.8, 32, 270, 272. That chronology directs the inquiry to the particular petitioning and responsive act alleged. It avoids attributing the earlier notice to a federal filing that had not yet occurred.

42. The access-to-courts theory requires separate treatment. A backward-looking access claim identifies the underlying nonfrivolous cause of action, the conduct frustrating it, and a remedy no longer otherwise available. *Christopher v. Harbury*, 536 U.S. 403, 415–16 (2002). Clayton's papers identify the discovery motion, asserted interference with filings or records, and alleged delay and enforcement consequences. ROA.8, 271, 274. The Rule 8 inquiry is whether those allegations sufficiently describe the litigation injury. It does not turn on an appellate finding

that Clayton was entitled to default, and it does not merge retaliation into the distinct lost-remedy requirements of an access claim. Neither merits inquiry supplies a substitute for identifying whether a state judgment caused the injury alleged.

43. *Bell v. Hood* and *Arbaugh* distinguish ordinary merits insufficiency from absence of federal-question jurisdiction. *Bell*, 327 U.S. at 681–83; *Arbaugh*, 546 U.S. at 513–16. *Johnson v. City of Shelby* likewise requires pleading issues to be addressed under the rules governing them. 574 U.S. 10, 11–12 (2014) (per curiam). At this stage, the Court examines the allegations and the governing legal standards. Proof of ultimate liability is not a prerequisite to correcting a jurisdictional dismissal that treats every administrative or retaliatory act as an injury caused by the support judgment.

**B. The enforcement and record-handling allegations identify separate procedures and injuries.**

44. Count I alleges docket manipulation, collection or credit reporting, and interference with filings without constitutionally required notice and an opportunity to be heard. ROA.271. The fact addendum identifies an alleged administrative cancellation during federal review. ROA.270, 272. The credit-reporting materials identify a separate economic consequence: Clayton's affidavit attributes lost employment to the OAG entry, and Chase's letter states that

consumer-report information contributed to the employment decision. ROA.138–141. These allegations identify asserted administrative conduct and resulting harm, rather than merely disagreement with the amount of support.

45. The notice theory concerns the process preceding the administrative deprivation. Count I alleges collection or credit reporting without the required notice and opportunity to be heard, and Count III seeks relief directed to the responsible enforcement officers. ROA.271. Section 666(a)(7)(B)(i) of Title 42 identifies notice and a reasonable opportunity to contest accuracy before furnishing support information to consumer-reporting agencies. That sequence supplies context for the pleaded Fourteenth Amendment claim; Clayton does not assert a new statutory cause of action on appeal. The alleged loss is the employment opportunity attributed to the reporting, not simply an unfavorable account balance. ROA.138–141. Whether constitutionally adequate procedures preceded that act can be adjudicated while leaving the support obligation intact. *See Zinermon v. Burch*, 494 U.S. 113, 125–32 (1990). *Blessett*'s distinction between administrative enforcement and a collateral attack on hearing notice applies directly. Slip op. at 2–3.

46. The record distinguishes the July 18 setting notice, the alleged cancellation during federal IFP review, and the September events described in the supplement. ROA.32, 270, 272, 274. An asserted administrative change and a judicial

disposition have different potential sources and consequences. The recommendation neither identified which act caused each alleged injury nor explained why adjudicating the separate enforcement and record-handling theories required rejection of a support judgment. ROA.295–296. That omission matters to the jurisdictional dismissal even though the district court remains responsible for applying the appropriate pleading and merits standards on remand.

**C. A mixed pleading requires claim-specific jurisdictional treatment.**

47. *English* itself demonstrates the proper treatment of a mixed case. The Fifth Circuit addressed each claim separately, rejected Rooker-Feldman as to an independently sourced defamation claim, and left other defenses and claims to their own governing rules. 154 F.4th at 372-75. The same structure is required here. If a particular request for prospective relief would require rejection of the Texas support judgment, that request can be treated accordingly without converting damages or access-to-courts allegations based on independent conduct into judgment-caused injuries.

48. The requested correction is claim-specific application of the jurisdictional rule actually used to dismiss the case. It is not a demand that Rooker-Feldman precede every other threshold inquiry. There is no mandatory order among jurisdictional questions. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). Whatever permissible threshold route the court selects, it must apply the

governing doctrine to the relevant claim and relief rather than use a family-law characterization to answer distinct questions.

## III. Alternative grounds must be applied to the defendant, claim, and remedy they govern.

### A. The defendants’ different capacities and requested remedies matter.

49. The actor-specific rules support examination of the challenged functions and participation. Article III standing is claim- and remedy-specific. *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). *Forrester v. White* requires a functional immunity analysis, rather than protection based on a judicial title alone. 484 U.S. 219, 227–29 (1988). Clayton attributes administrative interference to Samples and coordinated procedural participation to Robison. ROA.269–272; *see* ROA.33–35, 39. *Dennis v. Sparks* recognizes that a private person’s willful joint participation with state officials can constitute action under color of state law. 449 U.S. 24, 27–28 (1980). The asserted joint-action theory thus calls for examination of the pleaded participation and communications. Its sufficiency is a merits question distinct from whether the support judgment caused the asserted injury.

50. The enforcement claims identify an officer-directed path to relief. Count III seeks prospective relief from appropriate OAG officials and administrative supervisors for ongoing collection, credit-reporting, and record-maintenance practices; Count IV seeks a declaration concerning the challenged practices.

ROA.271. *Will v. Mich. Dep't of State Police* distinguishes an agency from officers sued for prospective relief. 491 U.S. 58, 64, 70–71 & n.10 (1989). That distinction requires construction of the officer allegations and the preserved request to identify or clarify the responsible defendant, rather than dismissal of every enforcement theory based on the agency's captioned name. ROA.303. The proposed amendment identifies an enforcement signatory and personal connection to a specific act. ROA.313–314. Clayton preserves review of the pleaded claims and seeks, alternatively, the requested clarification of parties, capacities, and remedies.

51. Clayton challenges the blanket Rooker-Feldman dismissal of the claims against Fulks and the entry of judgment without separately addressing his prejudgment request to clarify any defendant, claim, or remedy. ROA.269–270, 274, 303, 305–306. *Mireles v. Waco* requires examination of the nature and function of the challenged act. 502 U.S. 9, 11–13 (1991) (per curiam). The allegations concerning Fulks must therefore be assessed on her own alleged conduct, capacity, and requested relief, separately from Samples's record handling. Clayton seeks claim-specific review of the jurisdictional ruling and consideration of his preserved amendment request to specify Fulks's participation and the corresponding relief.

52. Clayton also challenges dismissal of the claim attributing concealment and intentional interference with custodial access to Daniels. ROA.269. His source-of-injury argument concerns her alleged conduct and his resulting personal injury,

while leaving custody orders intact. *Dennis v. Sparks* requires willful joint participation with state officials for the asserted § 1983 theory. 449 U.S. at 27–28. That inquiry concerns Daniels's own participation, not the dispute's domestic-relations label. Clayton seeks claim-specific review of the jurisdictional dismissal and consideration of his preserved request to clarify the factual basis of any claim requiring greater specificity. ROA.303. He does not abandon the claim or seek recovery on the child's behalf.

**B. Clear legal grounds may be resolved; fact-bound grounds may warrant remand.**

53. An alternative ground supports affirmance only to the extent it actually resolves the relevant claim and remedy on the existing record. The Court can address a dispositive legal issue without extending it beyond its reach. Here, the agency/officer distinction, the function attributed to a judicial officer, the alleged participation of private parties, and the availability of different remedies require separate analysis. Clayton's challenge to the blanket Rooker-Feldman dismissal preserves that examination across the independently sourced claims, rather than conceding them through a complaint-wide characterization.

54. *English* supports remand where the remaining alternative grounds require fact-bound, claim-specific consideration. After correcting the Rooker-Feldman ruling, the Fifth Circuit remanded additional grounds the district court had not reached

because many were fact bound. 154 F.4th at 375. That reasoning supports remand of any surviving allegations here that require evaluation of the actor, function, process, injury, and requested relief. It does not limit the distinct record review that *Farmers* requires for postjudgment amendment.

55. The preservice posture bears on that choice: the district court withheld service during § 1915 screening, and no defendant appeared before judgment. ROA.267–268, 305–306. Any abstention question also retains its own limits; *Younger* does not apply to every dispute related to ongoing state litigation, but begins with the exceptional categories described in *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78–82 (2013). Correcting the blanket dismissal would permit ordinary adjudication of surviving federal claims without awarding Clayton judgment or deciding a Texas support issue.

## IV. The amendment record does not supply ample and obvious grounds for denial.

### A. Dkt. 17 tendered a materially narrower complaint.

56. Dkt. 17 seeks reopening and leave to file an attached second amended complaint that materially narrows the relief. ROA.307, 312–315. Paragraph 2 excludes modification, termination, or a stay of a state support order and changes to arrears, custody, or visitation. ROA.313. The prayer requests limited declaratory relief and compensatory damages from nonimmune actors; it omits the earlier

demand to cease collection or withholding. ROA.271, 314 ¶ 19. Paragraph 12 identifies the May 13, 2024 notice, the OAG enforcement unit, the $6,105.89 balance, and Lisa Hawes as signatory. ROA.314. That is a concrete change in the proposed pleading, not merely a new label for the earlier prayer. The $6,105.89 balance identifies the dated lien event; the $12,403 credit entry identifies the separate reporting event. ROA.138, 314, 317. Clayton does not ask the Court to infer an incorrect arrearage from the difference between amounts recorded for different dates and purposes.

57. The proposed claim concerns the procedures accompanying an identified property restraint and later administrative conduct. ROA.313–314 ¶¶ 1, 6, 8–15. The accompanying motion expressly rejects automatic termination of support upon docket closure and invokes *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), to address the property interest, asserted risk of erroneous enforcement, and procedural safeguards. ROA.307–310. Read together, those papers seek review of an alleged procedural deprivation in enforcement while leaving the underlying support judgment intact. The claim must be assessed against the process actually required and available for the challenged act.

### B. *Farmers* requires appellate review under the postjudgment amendment standard.

58. After final judgment, a plaintiff must obtain relief through Rule 59 or Rule 60 before an amended complaint can proceed. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003). When the motion seeks reopening to permit amendment, Rule 15(a)'s considerations govern the exercise of discretion. *Farmers*, 168 F.4th at 276–80; *Allen*, 907 F.3d at 184–85. Rule 15(a)(2) directs that leave be freely given when justice requires, subject to delay, bad faith, repeated failure to cure, prejudice, and futility. *Foman*, 371 U.S. at 182.

59. Final judgment materially narrows the opportunity to amend; timely filing under Rule 59(e) does not itself entitle a litigant to another pleading. *Farmers* also rejects the contention that use of the wrong standard requires remand without appellate examination of the record. 168 F.4th at 276–80. The Court reviews for "ample and obvious" reasons supporting denial, rather than exercising the district court's discretion afresh. The preference for explicit reasons remains relevant, *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 478 (5th Cir. 2018), but it does not displace that appellate review.

### C. Clayton's prejudgment request distinguishes *Farmers*, and the record answers the *Foman* factors.

60. Clayton expressly sought amendment before judgment: "Plaintiff respectfully requests leave to amend if the Court concludes that further clarification is

required." ROA.303. The preceding sentence proposed clarification of "any defendant, claim, or form of relief." *Id. Farmers* stood on its pleading during the dismissal proceedings and did not seek further amendment in its objections. 168 F.4th at 274–81. Clayton instead placed targeted amendment before the district court while the action remained pending, then supplied the tailored proposal within twenty-eight days after judgment. ROA.307, 313–315. This record contains both a prejudgment request and a concrete postjudgment submission implementing the requested narrowing.

61. *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.* does not make the prejudgment sentence dispositive by itself. 336 F.3d 375, 386–87 (5th Cir. 2003). *Willard* rejected reliance on a bare conditional reference to amendment without the grounds or substance of a proposed cure; the plaintiff also failed to pursue amendment through a postjudgment motion. Clayton's record includes the express prejudgment request, the objections explaining the distinction he sought to preserve, and a timely postjudgment motion with the complete proposed pleading attached. ROA.298–304, 307–318. The present appeal challenges denial of that concrete submission. The earlier request supplies procedural context under *Farmers*; the attached proposal supplies the substance missing in *Willard*.

62. The May 2024 notice predates the July 2025 complaint. Its use in the proposal clarifies an enforcement dispute already pleaded; it is not offered as newly

discovered evidence. ROA.269–271, 307–310. *Farmers* permits consideration of previously known facts and burdens on the court as well as prejudice to an opponent. 168 F.4th at 279–81. Here, Clayton requested clarification before judgment and promptly tendered a proposal identifying the lien event, its signatory, and a narrower prayer after the court adopted the global jurisdictional rationale. ROA.303, 313–317. That chronology supplies a reason for the proposal's timing: it responds to the stated jurisdictional characterization through the narrowing previously requested. The notice's age must be evaluated in that procedural context.

63. The remaining procedural factors favor amendment. Service was withheld and no discovery or trial record needed to be reopened. ROA.267–268, 304. The August pleading responded to the screening order, and the November supplement expressly added no new defendants or causes of action. ROA.263–275. The recommendation rested on a global jurisdictional characterization rather than a series of adjudicated failures to cure the elements of a particular claim. ROA.293–297. Dkt. 18 identified repetition but no bad faith, specific prejudice, or burden arising from the narrowed prayer. ROA.322. These circumstances materially distinguish *Farmers*'s extended failure to request further amendment after notice of a specific defect.

64. Futility is measured by the legal-sufficiency standard of Rule 12(b)(6). *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). The proposal must contain facts permitting a plausible inference of liability, accepted as true for that inquiry. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, the proposed due-process claim identifies property restraints associated with a dated lien notice, the enforcement unit and signatory, an alleged defect in the enforcement process, continued conduct after notice of the dispute, and resulting property-related harm. ROA.313–314 ¶¶ 4, 6, 8–14; ROA.317. The inquiry is whether those allegations state the proposed constitutional wrong, not whether Clayton has already proved liability or whether the case concerns child support.

65. The asserted property interest is the ability to possess and transfer nonexempt property; the identified governmental act is the lien activity described in the May 13, 2024 notice. The covering letter states that a lien had been filed, describes restraints on transfer, and identifies possible levy or seizure. ROA.317. Paragraphs 9–14 allege defective enforcement procedures, continued conduct after notice of the dispute, and injury; the motion connects that theory to *Mathews*. ROA.308, 314. Clayton's asserted federal wrong is the use of coercive enforcement without constitutionally adequate procedures for the disputed enforcement basis. The resulting property harm and requested damages or declaration concern that asserted deprivation, not a recalculation of support.

66. The lien argument rests on the pleaded process defect, not an inference from a missing enclosure. ROA.317 reproduces the covering letter; the separate notice it references is not reproduced there. Clayton relies on the letter to identify the restraint and asserts no missing statutory language based on that omission. Texas Family Code § 157.313(a)(11), subject to subsection (e), addresses notice of the § 157.323 procedure, which permits suits concerning foreclosure, arrearages, and property ownership. Even assuming the enclosure identified that procedure, its availability must be evaluated against the alleged deprivation. Paragraphs 9–10 identify a disputed administrative basis for enforcement and continuation after notice of that dispute. ROA.314. A later determination of arrears or ownership would not itself answer whether the challenged restraint proceeded through adequate procedures. Under *Mathews*, the relevant questions include whether timely review could address that asserted defect and protect the affected property interest while enforcement continued. 424 U.S. at 335; ROA.308, 314. Section 157.312(d)'s automatic-lien provision does not dispense with that inquiry. Clayton seeks review of the process accompanying the restraint, leaving the support obligation intact, and the preserved opportunity to clarify the procedural allegations. ROA.303, 307, 310.

67. The proposal identifies the intended enforcement actor through the connection between its party and factual allegations. Paragraph 4 includes defendants

specifically identified through the later conduct alleged and limits liability to their own connection with that conduct; paragraph 12 names Lisa Hawes, gives her position and enforcement unit, and identifies her signature on the May 13 notice. ROA.313–314, 317. Read together, those provisions identify Hawes as the intended defendant for that act. If a separate party designation is required, Clayton expressly requests permission to name her and clarify the capacity and remedy tied to her own alleged participation. ROA.303. The proposed damages theory concerns personal participation in the asserted procedural deprivation; an official-capacity claim concerns only relief supported by that officer's connection to ongoing conduct. The signature supplies identification and connection to the notice, while paragraphs 9–14 supply the alleged process defect, continuation after notice of the dispute, and resulting harm. ROA.314. The Court should assess that combined pleading and the requested clarification under Rule 15.

68. The dates alone do not establish that the proposed amendment is time-barred. The May 15, 2026 tender followed the May 13, 2024 letter by two years and two days, but accrual turns on knowledge of the injury and its causal connection, not automatically the date printed on a notice. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). The original July 2025 action already challenged the collection conduct and resulting financial injury. ROA.4–6. Rule 15(c)(1)(B) therefore requires examination of whether the more specific lien allegations arise

from the conduct, transaction, or occurrence set out in that pleading. If expressly naming Hawes changes the party, Rule 15(c)(1)(C) separately requires timely notice and knowledge of a mistake concerning identity within the applicable service period. Clayton seeks that examination of the actual pleadings and notice circumstances, including the preservice history. ROA.267–268. Neither shared subject matter nor the tender date alone answers those distinct requirements, and the record does not establish an ample and obvious limitations ground disposing of the entire proposal.

### D. The anti-rehashing rule does not dispose of the separate amendment request.

69. Dkt. 18 relied on the principle that Rule 59(e) is not a vehicle to rehash arguments already made. ROA.319–322; *In re Deepwater Horizon*, 785 F.3d 986, 992 (5th Cir. 2015). That principle addresses repeated challenges to the existing judgment. It does not eliminate the separately tendered request to file an attached amended complaint, which must be assessed under the amendment considerations described in *Farmers* and *Allen*.

70. After the review *Farmers* requires, the Court should conclude that the prejudgment amendment request, the tailored proposal, and the preservice history do not furnish ample and obvious grounds to reject the entire amendment as repetitive. The proposal identifies the enforcement act and intended actor, limits

the requested relief, and directs the merits inquiry to the asserted procedural deprivation. ROA.303, 313–317. Clayton seeks leave for that proposed constitutional claim under the governing Rule 15 considerations. Dkt. 18's reliance on repeated jurisdictional argument did not address that submission.

71. The two issues remain distinct. Reversal of the April 17 dismissal depends on the operative pleading and the preserved source-of-injury objection. Review of the July 6 amendment order depends on the proposed pleading and the applicable *Foman* considerations. ROA.269–275, 298–322. Relief on either issue would allow adjudication within federal jurisdiction while leaving the Texas support judgment intact.

**V. Limited vacatur and remand are the proper disposition.**

72. The April 17 judgment should be vacated to the extent it dismissed independently sourced federal claims through the lawsuit's overall domestic-relations characterization. That requested review includes the administrative, retaliation, enforcement, credit-reporting, and declaratory theories presented in the operative papers, with the defendant and remedy distinctions addressed above. ROA.269–275. It is not limited to Samples and Robison. Each claim should receive its own source-of-injury analysis and, where necessary, application of the separate jurisdictional and merits rules. *English* supports remand of unresolved grounds requiring that fact-specific examination. 154 F.4th at 375.

73. The July 6 order should also be vacated if this Court, after reviewing the existing record under *Farmers*, finds no ample and obvious basis for denying the tendered amendment. Remand would permit the district court to apply Rule 15's considerations to the proposed pleading, including the prejudgment request and the specific narrowing, rather than reject the request solely as repetitive reconsideration.

74. Vacatur of the federal rulings would not itself set support, recalculate arrears, determine custody or visitation, or direct a Texas court to enter a different judgment. It would restore adjudication of the independently sourced claims and the tendered amendment under their governing standards. That appellate limitation does not validate the challenged administrative conduct or relinquish remedies for a federal wrong that can be adjudicated while leaving the underlying support judgment intact.

## CONCLUSION

75. Clayton respectfully requests that this Court vacate the April 17, 2026 judgment insofar as it dismissed independently sourced federal claims through a complaint-wide Rooker-Feldman “thrust” analysis; review the July 6, 2026 denial of amendment for ample and obvious Rule 15 grounds under *Farmers* and, absent such grounds, vacate that order; and remand for further proceedings. The requested disposition leaves the Texas support judgment and all state-law support determinations intact.

Respectfully submitted,

/s/ Jason A. Clayton
Jason A. Clayton, Pro Se
2401 W. Spring Creek Parkway, Apt. 2506
Plano, Texas 75023
310-600-4369
JasonAnthonyClayton@gmail.com

**CERTIFICATE REGARDING SERVICE**

The district-court action was dismissed before service of process. To Appellant's knowledge, no appellee or appellee counsel has appeared in this appeal. No service on an appellee is certified in this brief. Appellant is filing this brief with the Clerk of the United States Court of Appeals for the Fifth Circuit and will promptly comply with any service direction from the Clerk under Federal Rule of Appellate Procedure 25.

Dated: October 4, 2026.

/s/ Jason A. Clayton
Jason A. Clayton

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts exempted by Rule 32(f), it contains 7,986 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it was prepared in a proportionally spaced serif typeface using 14-point Liberation Serif.

/s/ Jason A. Clayton
Jason A. Clayton